UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EVONNE R., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br><br> Defendant.* | No. 20 CV 7652 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiff Evonne R.[1] appeals the Social Security Commissioner's denial of her application for disability insurance benefits and supplemental security income. Because the administrative law judge erred in determining plaintiff's residual functioning capacity—and the errors were not harmless—the decision is reversed and remanded.

I.  Legal Standards

The Appeals Council denied review, rendering the ALJ's ruling final under the Social Security Act, 42 U.S.C. § 405(g). *See Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). My review is confined to whether the ALJ applied the law correctly and supported his decision with substantial evidence. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). "Substantial evidence is not a high threshold." *Karr v. Saul*,

---

* Under Federal Rule of Civil Procedure 25(d), Acting Social Security Commissioner Kilolo Kijakazi replaces former Commissioner Andrew Saul as the defendant in this case.

[1] I refer to plaintiff by his first name and the first initial of his last name to comply with Internal Operating Procedure 22.

989 F.3d 508, 511 (7th Cir. 2021). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## II. Background

In November 2018, plaintiff applied for supplemental security income and disability insurance benefits, alleging disability beginning June 1, 2018. R. 15.[2] After the Social Security Administration denied her application, plaintiff appeared for a hearing before an ALJ in February 2020. *Id.* The ALJ issued an unfavorable decision the next month, finding that plaintiff was not under a disability any time after the alleged onset date. R. 30.

In reaching his decision, the ALJ applied the agency's five-step analysis for determining disability status, inquiring: (1) whether plaintiff is currently employed; (2) whether plaintiff has a severe impairment; (3) whether plaintiff's impairment is one that the Commissioner considers conclusively disabling; (4) if not, whether plaintiff can perform her past relevant work; and (5) whether plaintiff is capable of performing any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of proving disability at steps one through

---

[2] The administrative record, cited as R., can be found at [10-1], [10-2], and [10-3]. Bracketed numbers refer to entries on the district court docket. Other than in citations to the administrative record, referenced page numbers are taken from the CM/ECF header placed at the top of filings.

four, but the burden shifts to the Commissioner at step five. *See Gedatus*, 994 F.3d at 898.

Applying the first two steps, the ALJ found that plaintiff had not been gainfully employed since June 1, 2018, and that she had the following severe impairments: degenerative disc disease of the cervical spine and lumbar spine, depression, bilateral carpal tunnel syndrome, plantar fasciitis, obesity, diabetes mellitus, and ischemia. R. 17–18. At step three, the ALJ determined that plaintiff's impairments were not conclusively disabling. R. 18–20. In concluding that plaintiff's mental impairments did not meet or equal a listed impairment, the ALJ noted that while plaintiff reported difficulties performing personal care activities and household chores, she either attributed these issues to her physical limitations or did not indicate whether these issues resulted from mental or physical limitations. R. 20.

Next, the ALJ assessed plaintiff's residual functional capacity, which drives the analysis at steps four and five. R. 21–28; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's RFC represents her maximum ability to perform sustained work activities in an ordinary work setting—eight hours a day, five days a week—despite her impairments. *See* 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). To assess a claimant's RFC, the ALJ considers: (1) all the relevant evidence, medical and non-medical; (2) all the claimant's limitations, including non-severe ones; and (3) the claimant's physical and nonphysical limitations. *Id.*

3

The ALJ found that plaintiff had the residual functional capacity to perform light work, with some exceptions. R. 21; *see also* 20 C.F.R. §§ 404.1567(b), 416.967(b) (defining light work). According to the ALJ, plaintiff was able to: sit, stand, and/or walk for six hours in an eight-hour workday; occasionally climb stairs, ladders, ramps ropes, scaffolds; occasionally stoop, crouch, kneel, and crawl; and frequently reach overhead bilaterally, handle objects bilaterally (*i.e.*, perform gross manipulation), finger bilaterally (*i.e.*, perform fine manipulation of items no smaller than a paperclip). R. 21. The ALJ also included several environmental limitations and found that plaintiff could perform simple, routine, and repetitive tasks, as well as low-stress work with only occasional decision making and changes in the work setting. *Id.*

In making his RFC determination, the ALJ deemed unpersuasive the medical opinions of physician assistant Kelly Ott and examining psychiatrist Dr. Kenneth Levitan. R. 27–28. In April 2019, Ott filled out a physical residual functional capacity questionnaire, noting that she had treated plaintiff every one to three months for seven years. R. 1425. According to Ott, plaintiff could sit for up to 45 minutes before needing to get up, stand for 30 minutes before needing to sit down, and walk a half block without rest or severe pain. *Id.* Ott opined that plaintiff could stand or walk for less than two hours daily and sit for at least six hours daily, but plaintiff would need to stand and walk around for two to four minutes every 15 minutes and needed three to four unscheduled breaks daily for 10 to 20 minutes. R. 1426. Ott also noted that plaintiff needed to use a cane to walk or stand when her symptoms were bad, could rarely lift 10 pounds, and could never lift or carry 20 pounds or more. *Id.* Ott identified

4

severe limitations with reaching, handling, and fingering in both arms, concluding that plaintiff could spend only 10 percent of the workday reaching for, grasping, turning, twisting, or manipulating objects. *Id*.

A few weeks later, Levitan performed a psychological consultative exam. R. 906–09. Levitan noted that he reviewed a disability report appeal and outpatient medical records before interviewing plaintiff. R. 906. Levitan opined that plaintiff could perform simple, routine tasks and communicate with co-workers and a supervisor, but she would have difficulty handling mild to moderate work pressure and stress. R. 909. When feeling more stressed or upset, plaintiff would tend to focus more on her physical problems and symptoms. *Id*. Plaintiff could follow and understand instructions, Levitan wrote, but she may have difficulty retaining them from one day to the next. *Id*.

The ALJ found Ott's opinion unpersuasive for three reasons: (1) Ott did not provide sufficient detail regarding plaintiff's functional limitations such as her ability to lift or carry; (2) nothing in the record supported the finding that plaintiff was limited to sitting for 45 minutes and standing for 30 minutes; and (3) Ott's opinion was "inconsistent with the physical examination evidence detailed above." R. 27. The ALJ also deemed Levitan's opinion unpersuasive, for two reasons: (1) the record did not support the opinion that plaintiff would not remember work instructions from one day to the next because other examinations found that plaintiff had normal attention and concentration, and (2) Levitan's opinion was based on a single interaction with plaintiff and therefore provided only a snapshot of her functioning. R. 28.

5

After making his RFC finding, the ALJ concluded that plaintiff could not perform past relevant work as a retail store manager or a cashier checker. R. 28. The ALJ adopted the vocational expert's findings to conclude that plaintiff could perform work as a marker, furniture retail consultant, or routing clerk. R. 29–30. Accordingly, the ALJ concluded that plaintiff had not been under disability during the relevant period. R. 30. The Appeals Council denied plaintiff's request to review the ALJ's decision. R. 1. This suit followed.

### III. Analysis

I review whether the ALJ built an "accurate and logical bridge" between the evidence and his conclusion. *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)). To permit meaningful judicial review, an ALJ must "articulate adequately the bases for his conclusions," to assure the court that he "considered the important evidence and to enable [the court] to trace the path of [his] reasoning." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (citation omitted). While there's no requirement to mention every piece of evidence, *see Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021), the "ALJ must explain why he does not credit evidence that would support strongly a claim of disability, or why he concludes that such evidence is outweighed by other evidence." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010); *see also Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018) ("ALJs must confront evidence that supports a finding of disabled, … and then explain why it was rejected.").

Plaintiff argues that the ALJ erred in determining her RFC because the ALJ did not properly assess certain medical opinions, failed to properly account for plaintiff's manipulative limitations, and incorrectly evaluated plaintiff's symptoms.

An ALJ need not "defer or give any specific evidentiary weight" to any medical opinion. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[3] But an ALJ must evaluate each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements. 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). Supportability and consistency are the most important factors—an ALJ must explain how he "considered the supportability and consistency factors for a medical source's medical opinions," but need not explain how he considered the other three factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). In gauging supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion … is with the evidence from other medical sources and nonmedical

---

[3] This regulation applies to plaintiff's claim, which plaintiff filed after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c; *see also* Social Security Administration, *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017).

sources in the claim, the more persuasive the medical opinion … will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The Commissioner argues that the ALJ correctly assessed the opinions of Ott and Levitan. On consistency, the Commissioner highlights certain record evidence—such as findings of normal gait and full strength in plaintiff's arms, hands, and legs—that supports the ALJ's conclusion that Ott's opinion was inconsistent with physical examination evidence. *See* [18] at 6–7. And on supportability, the Commissioner contends that Ott conducted frequent examinations of plaintiff, and her treatment notes showed mostly normal findings and provided little support for her April 2019 opinion. *See id.* at 7. Further, the Commissioner cites record evidence of mental-status exams showing normal cognitive results and argues that the ALJ reasonably found this evidence inconsistent with Levitan's opinion regarding plaintiff's ability to remember instructions. *See id.* at 9. According to the Commissioner, "[t]he ALJ explained that he found Dr. Levitan's opinion about retaining instructions unpersuasive because it was inconsistent with the objective evidence as a whole and it was based on a single encounter with plaintiff." *Id.* at 10.

But judicial review is confined to the "agency's actual rationale for its decision, not an after-the-fact justification." *See Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943)); *see also Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) ("[A]n ALJ must articulate in a rational manner the reasons for his assessment of a claimant's residual functional capacity, and in reviewing that determination a court must confine itself to the reasons

8

supplied by the ALJ."). Here, the ALJ's actual rationale did not comport with the agency's regulation.

The ALJ concluded, for instance, that Ott did not "provide sufficient detail regarding the claimant's functional limitations such as her ability to lift and/or carry." R. 27. But that's incorrect; Ott's opinion included detailed findings that plaintiff could occasionally lift less than 10 pounds, rarely lift 10 pounds, and never lift more than 20 pounds. R. 1426. The ALJ then noted that nothing in the record supported Ott's opinion that plaintiff would be limited to sitting for 45 minutes and standing for 30 minutes, yet the ALJ did not discuss why Ott's opinions lacked internal support or point to evidence in the record that undermined her finding. Nor did the ALJ mention—let alone analyze—why any of Ott's other findings lacked support or consistency, including opinions about plaintiff's manipulative limitations.

Moreover, the ALJ asserted that Ott's opinion was "inconsistent with the physical examination evidence detailed above," *see* R. 27, but that broad reference to the earlier section of the opinion did not pinpoint a conflict with Ott's findings. *See Stewart*, 561 F.3d at 684 ("[T]he ALJ's discussion of evidence … without specifying what evidence factored into his determination … is contrary to our repeated holding that a denial of benefits cannot be sustained where an ALJ failed to articulate the bases of his assessment of a claimant's impairment."). A conclusion that a medical opinion inconsistent with the record is not enough—the ALJ must adequately explain the basis for that conclusion. *See Reinaas v. Saul*, 953 F.3d 461, 465 (7th Cir. 2020);

9

*see also Britt*, 889 F.3d at 426 ("RFC assessments must explain why a reported limitation is or is not consistent with the evidence in the record.").

Referring the reader to an earlier section of the opinion could be enough, if that earlier section contained the missing analysis. *See Jeske v. Saul*, 955 F.3d 583, 589–90 (7th Cir. 2020) (*Chenery* does not prohibit holistic review of an ALJ's decision). For example, the ALJ's opinion identified plaintiff's reports of persistent, limiting pain, but then noted inconsistent evidence such as normal range of motion, normal gait, and normal strength and sensation of her upper extremities. R. 21–22. The ALJ did not merely summarize that evidence, but concluded that the medical evidence outweighed plaintiff's claims about the intensity and persistence of her pain. *See* R. 23 ("[T]aking into consideration the claimant's … pain and reduced range of motion, but noting her normal gait, strength, and conservative treatment, the residual functional capacity limits the claimant to light work … ."). This is adequate to show how and why the ALJ discounted some of plaintiff's subjective claims. But on the issue of how Ott's opinion was inconsistent with the record evidence, more needed to be said to understand how the ALJ evaluated Ott's opinion specifically.

The ALJ need not defer to any medical opinion. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). But a "logical bridge" remains the touchstone of judicial review. So while a detailed analysis is not required, the ALJ must consider the regulatory factors and explain why a medical opinion is not supported or is not consistent with the record to give a reviewing court the bridge to connect the outcome to the record. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("[W]e will explain how we considered the

10

supportability and consistency factors for a medical source's medical opinions."); *see also Grotts v. Kijakazi*, 27 F.4th 1273 (7th Cir. 2022) (ALJ must examine regulatory factors and "minimally articulate" his reasoning for crediting or discrediting medical opinions); *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018) (ALJ erred by assigning medical opinions "little weight without considering relevant regulatory factors").[4] Here, the reference to "the physical examination evidence detailed above" falls short of that standard for Ott's opinion.

The ALJ also found Levitan's opinion regarding plaintiff's ability to retain daily instructions unpersuasive because it was based on a single interaction and other mental-status examinations had shown normal attention and concentration. R. 28. While the length and frequency of a treatment relationship are relevant considerations under the regulation, *see* 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3), the ALJ failed to explain how Levitan's opinion was not supported by the evidence or explain why plaintiff's ability to concentrate or pay attention during tasks was inconsistent with Levitan's opinion that plaintiff could not retain instructions from day to day. Concentration, attention, and memory are distinct capabilities, but the ALJ treated concentration and attention as coextensive with memory retention,

---

[4] *Grotts* and *Gerstner* assessed medical opinions under 20 C.F.R. § 404.1527(c)—the regulation applicable to claims filed before March 27, 2017. While the relevant factors in that regulation differ from the factors in the regulation applicable to more recently filed claims like plaintiff's, the new regulation does not disturb the principle that an ALJ must consider the relevant regulatory factors and minimally articulate his reasons for crediting or discounting a medical opinion. *Compare* 20 C.F.R. § 404.1527(c) ("[W]e consider all of the following factors in deciding the weight we give to any medical opinion.") *with* 20 C.F.R. § 404.1520c(c) ("We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case.").

11

without explanation. That did not adequately address the supportability or consistency of Levitan's opinion.

The ALJ was required assess the weight of Ott's and Levitan's opinions under the relevant regulation. *See Reinaas*, 953 F.3d at 465–66. The ALJ erred by discarding their opinions without explaining "how [he] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

These errors were not harmless. For example, the ALJ never mentioned Ott's opinion that plaintiff could bilaterally reach, handle, or finger for only 10 percent of the workday. R. 1426. This finding conflicted with the ALJ's RFC determination that plaintiff could do all these things "frequently"—up to two thirds of the day. *See* SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) ("'Frequent' means occurring from one-third to two-thirds of the time."). Two of the three occupations that the ALJ found plaintiff could perform—representing an overwhelming majority of the "jobs available in the nation," according to the ALJ's findings—require frequent handling, fingering, and reaching. *See* "Marker," Dictionary of Occupational Titles, Job No. 209.587-034, 1991 WL 671802; "Routing Clerk," D.O.T. Job No. 222.687-022, 1991 WL 672133. The third job requires occasional handling, fingering, or reaching (*i.e.*, up to one third of the time). *See* "Furniture-Rental Consultant," D.O.T. Job No. 295.357-018, 1991 WL 672589; *see also* SSR 83-10, 1983 WL 31251, at *5 (defining "occasionally"). And the vocational expert testified that a hypothetical claimant would be precluded from working if, in addition to plaintiff's other limitations, the claimant

12

was confined to sedentary work and could only occasionally (as opposed to frequently) handle or finger with both hands. R. 70–71. (The vocational expert also testified that a claimant who needed reinstruction every day would not be able to sustain competitive employment. R. 71.) Because the ALJ did not discuss Ott's manipulative-limitation findings at all, it is unclear whether he "considered and dismissed, or completely failed to consider, this pertinent evidence." *Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015).[5]

What's more, the ALJ did not meaningfully address plaintiff's testimony regarding her daily activities. An RFC must adequately account for a claimant's deficits. *See Mandrell v. Kijakazi*, 25 F.4th 514, 515 (7th Cir. 2022); *Lothridge v. Saul*, 984 F.3d 1227, 1232–33 (7th Cir. 2021). And in doing so, an ALJ must account for "a claimant's limitations in performing daily activities." *Meuser v. Colvin*, 838 F.3d 905, 913 (7th Cir. 2016) (citation and quotation marks omitted); SSR 16-3p, 2017 WL 5180304, at *7 (Oct. 25, 2017).

At the hearing before the ALJ, plaintiff testified that she could barely do any chores around the house—including sweeping, mopping, and washing dishes—or go

---

[5] Plaintiff also argues that the ALJ did not comply with the agency's "narrative-discussion" requirement because he simply summarized the evidence regarding plaintiff's manipulative limitations. *See* [14] at 10–14; *see also* SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."). Plaintiff cites *Herrmann v. Colvin*, 772 F.3d 1110 (7th Cir. 2014), in which the court found that a claimant with more grip strength than plaintiff still had "well below the normal range for women" plaintiff's age. *Id.* at 1112. Because the ALJ did not adopt greater restrictions, plaintiff contends that the ALJ did not weigh this evidence. I disagree. The problem isn't that the ALJ only summarized the evidence. The problem is that the ALJ did not consider or sufficiently explain how the evidence was inconsistent with medical opinions that had some evidentiary support.

13

shopping due to issues with her back, neck, and hands. R. 46–47, 49–50. Plaintiff also testified that she struggled getting dressed, combing her hair, using a knife and fork, and that tying her shoes was "excruciating." R. 48–50, 56. Plaintiff also testified that she had difficulty with her memory; specifically, that she had to number boxes for her medication "just to remember if I took the morning, evening[,] or bedtime dose," and she could not remember numbers, usernames, and passwords to get into accounts. R. 62. Plaintiff testified that she would see things one day and not remember them the next, or she would get out of bed to go to the refrigerator, only to not remember what she was going to get. R. 63.

Despite this testimony, the ALJ simply noted that plaintiff's "allegations were considered and found to be inconsistent and not well supported by the objective medical findings, the claimant's statements about her activities, and the claimant's doctors' observations." R. 28. The ALJ did not explain how plaintiff's testimony regarding her daily activities lacked credibility or conflicted with the record. Rather, the ALJ's only discussion of plaintiff's daily activities occurred at step three, when ALJ noted that plaintiff had reported difficulty performing some daily activities, the cause of which was either physical or unclear. *See* R. 20. But at no point did the ALJ describe how these difficulties were not as severe as alleged. On remand, the ALJ must adequately consider and analyze plaintiff's daily-activity testimony in assessing her RFC.

## IV. Conclusion

The Commissioner's motion for summary judgment, [17], is denied. The ALJ's decision is reversed, and this case is remanded for further proceedings consistent with this opinion. Enter judgment and terminate case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: March 24, 2022